ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

JOSEPH J. SUTTON.

| 53 397 |
|146 591|
| 53 397 |
| 53a 612 |
| 53 397 |
|e109a³515|

1. PASSENGERS *on freight trains.* In a suit against a railroad company for damages resulting to the plaintiff by reason of his being put off a freight train on which he had taken passage without first procuring a ticket, it was objected that the plaintiff had not proven such train was employed in carrying passengers: *Held,* it was sufficient that the evidence showed defendants, at the time of the occurrence, were accustomed to carry passengers on freight trains; that notices were posted up around the window of the ticket office, that passengers on freight trains must first obtain tickets, and that there were persons on the train who had procured tickets.

2. ALLEGATIONS AND PROOFS—*as to place from which a passenger was to be carried.* An averment in the declaration that the defendants, for a consideration, undertook and promised to convey the plaintiff, as a passenger upon their cars, from "West Urbana to Tolono," is supported by proof showing the undertaking was to carry the plaintiff from " Champaign City to Tolono," it also appearing, from the evidence, that West Urbana and Champaign City are one and the same place.

3. MEASURE OF DAMAGES—*in action against a railroad company for personal injuries.* In an action for personal injury, unless the injury complained

of was willful, mental suffering of the plaintiff, such as is produced by an injury to one's reputation by circumstances of indignity and contumely under which the injury was done, and the consequent public disgrace to the plaintiff, can form no part of the inquiry by a jury, in estimating the damages. In such case the only inquiry for the jury is, the bodily injury to the plaintiff, with such consequential damages as were the necessary result of the injury.

4. PASSENGERS *on railroads—of the place of putting them off for want of tickets.* Railroad companies are liable for injuries caused to a person by reason of the company or their servants putting him off, or compelling him to leave their train at any other than a regular station.

APPEAL from the Circuit Court of Ford county; the Hon. A. J. GALLAGHER, Judge, presiding.

The opinion states the case.

Mr. W. D. SOMERS, for the appellants.

Mr. E. L. SWEET, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case, tried in the Ford Circuit Court, on a change of venue, brought by Joseph J. Sutton against the Illinois Central Railroad Company, for damages resulting to the plaintiff by reason of his being put off a freight train on which he had taken passage without first procuring a ticket.

The jury found in favor of the plaintiff, and assessed his damages at eleven hundred and fifty dollars, on which the court rendered judgment.

To reverse this judgment, the defendants appeal to this court.

Appellants make the point that it was not proven the train on which the plaintiff embarked, was employed in carrying passengers. It may be true no proof was offered that this particular freight train was so employed, but it is proved by

the appellants' witness, Oliver, that notices were posted up around the window of the ticket office that passengers on freight trains must first obtain a ticket, and it was proved by Mr. Ayers that appellants were, at the time of this occurrence, accustomed to carry passengers on freight trains. This train is not shown to have been an exception, besides, it is proved there were several passengers upon this train who had procured tickets. This is sufficient to show that this train was, *pro hac vice*, a train for the conveyance of passengers.

They make the further point, that the averment in the declaration of the defendants undertaking to convey the plaintiff from West Urbana to Tolono, is not sustained by proof of an undertaking to convey from Champaign City to Tolono.

It would appear, from the testimony, that West Urbana and Champaign City are one and the same place, consequently there was no variance.

The principal objection of appellants is made upon the instructions given for the plaintiff; the first, especially.

There is one objection to that instruction, in that part of it which directs the jury to consider, in estimating the damages, any mental suffering the plaintiff may have undergone, consequent upon the injury. The law is well settled, where the injury is not willful, mental suffering forms no part of the inquiry by a jury. 2 Greenlf. Ev. sec. 267.

The plaintiff had entered the caboose car of a freight train without a ticket, and though he offered to pay his passage, he was told by the conductor the rules of the company forbid him taking fare, and as he had no ticket he must leave the car, which the plaintiff did, and this not at a regular station of the company. Here is an absence of anything like willfulness or malice on the part of the conductor, and being so, mental suffering, by which we understand such as is produced by an injury to one's reputation, by circumstances of indignity and contumely, under which the injury was done, and the consequent public disgrace to the plaintiff. This case is robb'd of everything of this nature, and the only inquiry for the jury was,

the bodily injury, and such consequential damages as were the necessary result of the injury. It appears there had been a previous trial of this cause, in which the plaintiff recovered four hundred and fifty dollars damages. How much this instruction may have contributed to swell the verdict, under the same facts, to more than eleven hundred dollars, if it contributed in any degree to that result, can not be known, but in looking into the evidence, it is very apparent the plaintiff was a great sufferer by the act of appellants, in his body and business, and the amount found by the jury is no more than just compensation therefor, if they really reach the measure to which he was entitled. The conductor, when the money was offered for the fare, was informed by the plaintiff he was sick and unable to walk back one mile and a half to the station, through the mud, and if the doctor is to be believed, the consequences of this effort were of the most serious character, he, at the time, having a distressing disease.

The disease was aggravated, confining him to his bed, compelling him, when partially restored, to leave his business and resort to a water cure establishment—disabling him from giving that attention to his affairs their importance required, and resulting in great pecuniary losses to him.

This being so, we would not, for the error pointed out in this instruction, reverse the judgment, for the evidence shows a clear violation of the law in causing the plaintiff to leave the train not at a regular station, and under circumstances of considerable aggravation.

The objections to the third and fourth instructions are not tenable, as the evidence that appellants' freight trains carried passengers, included the particular train in question.

Cases of this nature have been frequently before us, and it seems strange, when the law is so plain, that a passenger shall not be put off a train except at a regular station, it should be so often violated, and when there appears no necessity for such violation. In this case, the train had not advanced more than a mile and a half from the station. How much more in

consonance with the dictates of humanity would it have been for this conductor to back the train a few hundred rods, so that a sick man should be subjected to as slight inconvenience as possible. But even this would never be necessary, if the order was given conductors of freight trains, before leaving a station, to visit the caboose car and demand a sight of the tickets, and if any passenger is there without a ticket, peremptorily decline to take him, and if he persists in remaining, then forcibly, if necessary, expel him from the car. Either this rule must be adopted, or the conductors of such trains must be authorized to receive fares, or, and to that the public will not submit, decline to receive passengers on freight trains. If they will leave a station without first seeing that the passengers are provided with tickets, and then, in violation of law, require them to leave the car, not at a regular station, it must be expected juries will not be slow to visit them with the most exemplary damages, by way of punishment for such conduct. Courts will interpose in vain in setting their findings aside as excessive, for a second verdict, as in this case, will usually be greater than the first.

Upon a review of the whole case, we do not perceive any grounds on which to reverse this judgment, and must affirm it.

*Judgment affirmed.*